1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAWN JOHNSON,

11           Plaintiff,                    No. CIV S-05-0592 FCD CMK

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of Social Security,

15           Defendant.               FINDINGS & RECOMMENDATIONS
     _____/
16

17           Plaintiff, Dawn Johnson, brings this action pursuant to 42 U.S.C. § 405(g),

18   seeking judicial review of a final decision of the Commissioner of Social Security

19   (Commissioner) ordering cessation of her supplemental social security income (SSI) benefits.

20   The parties have filed cross motions for summary judgment.  For the reasons discussed below,

21   the court recommends plaintiff's motion for summary judgment or remand be denied and the

22   Commissioner's cross motion for summary judgment be granted.

23   ///

24   ///

25   ///

26   ///

1   I.  Background

2          Plaintiff applied for SSI on April 17, 1990.  Her application was initially denied,

3   but approved upon a reconsideration determination dated September 10, 1991.  She was found

4   disabled due to personality disorder, bipolar disorder, and drug and alcohol addiction with an

5   onset date of April 1, 1990.  Pursuant to a continuing disability review, plaintiff's benefits were

6   terminated effective November 1999.  A Disability Hearing Officer upheld the cessation on

7   October 11, 2000.  Plaintiff filed a request for a hearing before an Administrative Law Judge

8   (ALJ) on November 17, 2000.   A de novo hearing was held before Administrative Law Judge

9   Ramsey on August 21, 2001.

10          In his December 18, 2001 decision, the ALJ made the following findings.  He

11   found that plaintiff was previously found to be disabled on the basis of personality disorder,

12   bipolar disorder and drug and alcohol addiction. (Tr. 27.)   The ALJ determined that plaintiff's

13   medical condition had improved since the comparison point decision (CPD)[1] of September 10,

14   1991, and that plaintiff's medical improvement was related to her ability to work.  (Tr. 27-28.)

15   He concluded that the current medical evidence established that plaintiff has "severe"

16   impairments consisting of substance addiction disorder, bipolar disorder, depression, and

17   curvature of the spine.  (Tr. 28.) He found that plaintiff's allegations regarding her limitations

18   were not totally credible, and that plaintiff was capable of performing a full range of light work.

19   (Tr. 28.)  He noted, however, that plaintiff was limited to work involving simple, repetitive tasks.

20   Using Rule 202.20 as a framework for decision making, the ALJ found that there were a

21   significant number of jobs  that plaintiff could perform, which were consistent with her residual

22   functional capacity, age, education, and work experience.

23   ///

24   ///

25
          [1]A comparison point decision is the most recent decision of the Commissioner rendering
26   a determination or decision that a person is disabled.  See 20 C.F.R. § 404.1594(b)(1)(vii)(2005).

1      Based on these findings, the ALJ concluded that plaintiff was not disabled. The

2  decision of the ALJ became final when the Appeals Council denied plaintiff's request for a

3  review on January 24, 2003. The plaintiff filed a timely appeal in this court on March 24, 2005.

4  II. Standard of Review

5      This court's review is limited to whether the Commissioner's decision to deny

6  benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported

7  by substantial evidence on the record as a whole.  See Copeland v. Bowen, 861 F.2d 536, 538

8  (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573,

9  575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but

10  less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v.

11  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such evidence as a reasonable

12  mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389,

13  402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59

14  S. Ct. 206 (1938)).  The court must consider both evidence that supports and evidence that

15  detracts from the Commissioner's decision, but the denial of benefits shall not be overturned

16  even if there is enough evidence in the record to support a contrary decision. See Jones v.

17  Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  If substantial evidence supports the administrative

18  findings, or if there is conflicting evidence supporting a finding of either disability or

19  nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-

20  30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

21  weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

22  III.    Discussion

23      In her motion for summary judgment, plaintiff argues that the ALJ erred by

24  rejecting her treating physician's opinions without a legitimate basis; failing to credit plaintiff's

25  complaints regarding her functional limitations; and failing to consider plaintiff's symptoms and

26  functional limitations that would interfere with her ability to perform work on a sustained basis.

3

1          A.      Opinion of Treating Physician

2          Plaintiff argues that the ALJ rejected the opinion of her treating physician, James

3    Lee, M.D., without providing a legitimate basis for doing so.  The opinion of a treating physician

4    is not necessarily conclusive as to either the physical condition or the ultimate issue of

5    disability."  Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999).  An ALJ may reject the

6    uncontradicted opinion of a treating physician only for "clear and convincing" reasons.  See

7    Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995).  When conflicting medical evidence is

8    presented, however, the ALJ must resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

9    1041 (9th Cir. 1995).  Although the treating physician's opinion is given deference, the ALJ may

10   reject it in favor of a contradicting opinion of an examining physician, providing the ALJ makes

11   specific findings setting forth specific, legitimate reasons for doing so that are based on

12   substantial evidence in the record.  See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

13   The ALJ may satisfy this requirement by setting out a summary of the facts and conflicting

14   clinical evidence, stating his interpretation thereof, and making findings.  See Thomas v.

15   Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

16         At the onset, the court notes that, in evaluating whether plaintiff's disability

17   ceased, the ALJ (and a reviewing court) must evaluate whether plaintiff's medical condition had

18   improved since her CPD in September 1991 such that she could work.  The ALJ's rejection of

19   the opinion of Dr. Lee is supported by substantial evidence in the record.

20         Dr. Lee was plaintiff's family physician from March 1996 until August 29, 2001.

21   (Tr. 277-390, 688-694.)  Dr. Lee's treatment notes from 1996 state that plaintiff had a new job

22   that was very physical and that she was going on a short vacation.  (Tr. 302.)  He noted in April

23   1998 that plaintiff was back at work, her back was flaring up, but she had no palpable

24   muscle/spasms.  (Tr. 304.)  Dr. Lee observed in 2000 that plaintiff could function on a job when

25   clean and sober and indicated that her mental limitations limited her understanding,

26   remembering, and carrying-out short and simple instructions, but he specifically noted that

4

1 plaintiff's limitations were moderate to severe and did not preclude her employment.  (Tr. 281-

2 282.)  In September 2000, Dr. Lee observed that plaintiff complained of numbness, tingling and

3 weakness in her legs, with her right leg being greater than her left; he also noted that she had

4 sudden onset of severe pain, which, at times caused her to fall to the floor.  (Tr. 666.) Dr. Lee

5 diagnosed plaintiff with degenerative disease of the spine with kyphoscoliosis, chronic

6 obstructive pulmonary disease, narcolepsy, bipolar disorder, and pseudoaddiction.  (Tr. 668-

7 670.)  Dr. Lee noted that plaintiff had an unsteady gait.  (Tr. 652.)

8 　　　　　　The ALJ adequately included these observations of Dr. Lee in his findings;

9 describing Dr. Lee's treatment records from March 1996 through 1998 as containing a diagnosis

10 of degenerative disease of the spine unconfirmed by x-rays or MRI's, a narcolepsy diagnosis

11 unconfirmed by a required sleep study, and a poor pulmonary function test described as

12 "moderately severe" and potentially requiring home oxygen "within the next five years."  (Tr.

13 23, 685.)

14 　　　　　　The ALJ found that Dr. Lee's observation notes were inconsistent with his very

15 limited residual functional capacity opinion of August 29, 2001 and also noted that Dr Lee's

16 opinion of plaintiff's very limited capacity was at odds with other objective evidence in the

17 record.  (Tr.23, 687-694.)  Specifically, the ALJ noted that Dr. Lee's assessment that plaintiff

18 was limited to walking less than one hour in an eight hour workday and no more than ten

19 minutes without interruption; sitting one to two hours in an eight hour work day and no more

20 than thirty minutes at a time; limited to lifting five to ten pounds frequently and impaired in her

21 ability to sit, lift, stand and walk in any weight bearing posture conflicted with Dr. Lee's

22 progress notes that plaintiff was performing very physical work, could function at a job when she

23 was clean and sober and had moderate to severe mental limitations which did not preclude her

24 employment. (Tr. 23.); See Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989)(rejecting a

25 treating physician's opinion, in part, because it was inconsistent with the contemporaneous

26 medical notes).

1        The ALJ observed that Dr. Lee's extremely limited assessment of plaintiff was

2   contrary to the objective medical findings and to plaintiff's own description of her daily

3   activities which included feeding the dog, shopping and doing laundry. See Andrews, 53 F.3d at

4   1041 (It is up to the ALJ to resolve conflicting medical evidence).  For example, the ALJ

5   rejected Dr. Lee's opinion that narcolepsy would pose an additional work related problem to

6   plaintiff because the objective medical evidence did not reflect that plaintiff actually suffered

7   from this disorder—she had never had the required sleep test.

8        Further, the ALJ credited Dr. Lee's opinion as a treating physician over that of a

9   consultative physician. (Tr. 25.)  Ashaf Elmashat, M.D. conducted a consultative psychiatric

10  examination of plaintiff and concluded that plaintiff had bipolar disorder, was depressed and

11  assessed a Global Assessment of Functioning (GAF) score of 60, indicating only moderate

12  symptoms.  (Tr. 446-450.)  Dr. Elmashat opined that plaintiff was malingering and stated no

13  objective psychiatric findings supported limitations on plaintiff's ability to work.  (Tr. 450.)  The

14  ALJ, however, credited Dr. Lee's opinion that plaintiff had limitations to simple work.  (Tr. 25.)

15       In summary, the ALJ discredited parts of Dr. Lee's opinion because it could not be

16  supported by objective medical evidence and was contrary to Dr. Lee's own treatment notes.

17  See Weetman, 877 F.2d at 23.  The ALJ weighed the conflicting medical evidence and acted in

18  accordance with his duty to determine the credibility of the evidence, and gave specific

19  legitimate reasons for discounting Dr. Lee's opinion.  See Magallanes, 881 F.2d at 750.

20  Accordingly, the  court finds that the ALJ's findings are supported by substantial evidence and

21  recommends that the ALJ's findings be affirmed.

22       B.      Subjective Complaints Regarding Functional Limitations

23       Plaintiff next claims that the ALJ improperly rejected her subjective allegations of

24  pain and limitation.  An ALJ may reject subjective complaints if he provides specific reasons for

25  explaining why a claimant's testimony was not credible.  See Bunnell v. Sullivan, 947 F.2d 341,

26  345-346 (9th Cir. 1991).  In determining whether subjective complaints are credible, the ALJ

6

1   should first consider objective medical evidence and then consider other factors.  See id. at 344.

2   Other factors include plaintiff's daily activities, prior inconsistent statements or inconsistent

3   testimony,  unexplained or inadequately explained failure to seek treatment, and lack of

4   supporting objective medical evidence. See  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir.

5   1996).

6           Here, the ALJ noted that the findings of consultative internist, Duc Pham, M.D.,

7   and Dr. Elmashat's findings were generally consistent with plaintiff having the ability to perform

8   light work. (Tr. 23-25; 444.); see Moncada v. Chater, 60 F.3d 521, 542 (9th Cir. 1995) (stating

9   that a valid specific reason for rejecting plaintiff's excess pain complaints was, among other

10  things, a doctor's opinion that plaintiff could perform sedentary work).  The ALJ considered

11  inconsistencies in plaintiff's testimony; contrary to her hearing testimony that she could not

12  perform most activities of daily living and that she slept all day, she told Dr. Elmashat that she

13  took walks, visited friends, took care of her own hygiene, paid her bills, and did her own

14  shopping and housekeeping.  (Tr. 26, 448).  See Smolen, 80 F.3d at 1284; Orteza v. Shalala, 50

15  F.3d 748, 750 (9th Cir. 1995)(ALJ allowed to consider ability to perform daily activities).  The

16  ALJ noted plaintiff's inconsistent testimony concerning her recent heroin and cocain use and Dr.

17  Elmashat's notation of needle tracks on both of plaintiff's arms.  (Tr. 26, 39, 47, 49, 65, 449.)

18  The ALJ further noted that plaintiff had failed to seek treatment for her alleged mental

19  impairments.  (Tr. 26); See  See Smolen, 80 F.3d at 1284.

20         The court finds that the ALJ's credibility determination is supported by substantial

21  evidence in the record.  See Bunnell, 947 F.2d at 346. The court recommends that the ALJ's

22  credibility findings be affirmed.

23         C.      Residual Functional Capacity

24             Plaintiff claims that the ALJ erred in determining that plaintiff retained the

25  functional capacity to perform sustained work. Specifically, petitioner argues that the ALJ

26  minimized and discounted evidence regarding the impact of plaintiff's physical and mental

7

1   impairments on her ability to perform work related functions.  Simply stated, a plaintiff's

2   residual functional capacity is a determination of what the plaintiff can still do despite her

3   physical, mental and other limitations.  See C.F.R. §§ 404.1545(a), 416.945(a).  In determining

4   residual functional capacity, an ALJ must assess all the evidence (including the plaintiff's and

5   others' descriptions of limitation and medical reports) to determine what capacity the claimant

6   has for work despite her impairments.  See id.

7           Here, the ALJ considered that the medical evidence was inconsistent with

8   plaintiff's claim that her alleged mental and physical impairments were so debilitating that she

9   could not perform work at any exertional level.  (Tr. 26.)  Specifically, the ALJ noted that

10  plaintiff's mental impairments resulted in mild restrictions of daily living activities, moderate

11  difficulty in maintaining concentration, persistence or pace and mild difficulties in social

12  functioning.  (Tr. 25.)  He noted that the credible medical evidence in the record, including the

13  assessment of consulting internist Dr. Pham and the treatment notes of treating physician Dr.

14  Lee, supported the conclusion that plaintiff could perform a full range of light work, but was

15  limited mentally to jobs with repetitive tasks.  (Tr. 22.)

16          Plaintiff argues that treating physician Dr. Lee found that "[plaintiff's] erratic

17  routine would likely result in termination from any employment and that this statement supports

18  a conclusion that plaintiff would be unable to work on a full time basis.  However, Dr. Lee's

19  statements on what a prospective employer might do constitute a vocational opinion rather than a

20  medical one, and, the ALJ was justified in rejecting this opinion.  See Katz v. Secretary of

21  Health & Human Services, 972 F.2d 290, 293 (9th Cir. 1992) (stating a doctor's opinion as to a

22  medical condition is different from an opinion as to an individual's actual functional

23  performance in a job setting).  Additionally, the record demonstrates that plaintiff was able to

24  perform ordinary, repetitive work on a continuing basis.  She testified that she liked to color

25  collage and mirage and  was putting a whole wall of them together.  (Tr. 64.)  She further stated

26  that she had finished a big one a couple of years ago, and had been working on this artwork for

8

1    five to six years.  (Tr. 64.)

2              After a careful review of the record, the court finds that the ALJ's findings are

3    supported by substantial evidence and recommends that they be affirmed.

4    IV.    Conclusion

5              The ALJ's decision is fully supported by substantial evidence in the record and

6    based on the proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED that:

7                   1.  Plaintiff's motion for summary judgment or remand be denied, and

8                   2.  The Commissioner's cross motion for summary judgment be granted.

9              These findings and recommendations are submitted to the United States District

10   Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten

11   days after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14   shall be served and filed within ten days after service of the objections.  The parties are advised

15   that failure to file objections within the specified time may waive the right to appeal the District

16   Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17   DATED:   September 6, 2006.

18

19                                             _____
                                               **CRAIG M. KELLISON**
20                                             UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26